NORTHWESTERN NATIONAL LIFE
INSURANCE COMPANY

v.

LAUREL FEDERAL SAVINGS
BANK, et al.

Civil No. S 94–3548.

United States District Court,
D. Maryland.

April 2, 1997.

Robert W. Beddle, Pamela J. White, J. Kirby Fowler, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for Northwestern Nat. Life Ins. Co.

Ward B. Coe, III, Whiteford, Taylor & Preston, Baltimore, MD, for Laurel Federal.

Philip C. Smith, Christopher F. Davis, Hearne & Bailey, Salisbury, MD, for First Shore Federal.

Robert Paul Muller, Salisbury, MD, pro se.

### MEMORANDUM OPINION
### AND ORDER

SMALKIN, District Judge.

This matter is before the Court on the remaining issue in the case, *viz.*, the amount of damages to be allowed the plaintiff in consequence of the conversion, by the remaining defendant depositary bank, Laurel Federal, of two checks made payable to plaintiff's order and paid over the unauthorized endorsement of its agent, Mr. Muller. By Memorandum Opinion and Order dated February 27, 1996, the Court established the defendant Laurel Federal's liability for converting the items under U.C.C. § 3–419(1)(c)

and (3). The only open issue is the damages question.

■ It is clear that U.C.C. § 3–419(2) articulates two levels of damage liability for the conversion of negotiable instruments. If the defendant is the drawee bank, the amount of liability is settled at the face amount of the check. In other cases, such as the present one involving a depositary bank, there is a presumption that the amount of liability is the face amount of the instrument. A U.C.C. presumption, as defined in § 1–201(31), is the sort of presumption that entitles the party in whose favor it runs to prevail unless and until there is evidence introduced that would support a finding of the non-existence on presumed fact.

■ Defendant argues most strongly that Northwestern "has no interest in the checks at issue." This Court completely disagrees. Northwestern certainly had a legitimate interest in righting the wrongs perpetrated by Muller clothed as a Northwestern agent, including foisting off phony policies on unsuspecting consumers, representing them as true Northwestern products. Any reasonable person would have to agree that, in the circumstances, it is reasonable to make good the loss to the consumer, either by tendering her a valid product or refunding her money. Northwestern refunded the money. It is true that, had Northwestern not chosen to pursue its U.C.C. remedy against the depositary bank, the drawers of the checks might have been successful in lawsuits seeking re-credits of their accounts with their drawee bank under U.C.C. § 4–401, on the ground that items with an agent's unauthorized endorsement are not "properly payable. Indeed, such actions would have inevitably led the drawee banks to assert subrogation rights against the depositary bank, U.C.C. § 4–407, which would, in turn, have engendered difficult litigation calling into question the *bona fides* of Muller's agency, possible ratification, and a host of other issues. It was perfectly legitimate, then, for Northwestern simply to refund the face amount of the checks and avoid the stirring up of needless litigation.

■ The defendant, Laurel Federal has not introduced such evidence as would, under U.C.C. § 1–201(31), support a finding that Northwestern's damages were any less than the face amounts of the checks at issue. Nor, of course, is there any evidence that would support a finding that damages should exceed the face amounts of the checks. The Court rejects plaintiff's attempt to relitigate the issues concerning other checks from the same drawers, as the Court has already squarely held those checks were not converted by either of the defendants. In any event, in light of official Comment 4 to U.C.C. § 3–419, it is difficult to conceive of any case in which the damages would exceed the face amount of the converted items.

Thus the Court will enter judgment in favor of the plaintiff, against the defendant, Laurel Federal, for the face amounts of the checks, *viz.,* $18,566.97, with pre-judgment interest awarded, in the Court's discretion under Maryland law, in the amount of 6% *per annum* from the date of deposit of the two checks (October 28, 1991 as to the $5,000 check and April 24, 1992 as to the $13,566.97 check) to the date of judgment, with interest at the statutory rate thereafter. The judgment will also provide for the award of costs from plaintiff to the defendant, First Federal, and from defendant, Laurel Federal, to the plaintiff.